**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SHANA GIBBS.,

                *Plaintiff,*

    v.

NATIONAL SKI PATROL SYSTEM, INC.,
LABRADOR MOUNTAIN SKI PATROL, and
CNY SKI MANAGEMENT, LLC (d/b/a
Labrador Mountain),

                *Defendant.*

Civil Action No.:  5:25-cv-1720 (GTS/MJK)

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Shana Gibbs ("Plaintiff" or "Ms. Gibbs"), by and through her undersigned

attorneys, brings this action against Defendants National Ski Patrol System, Inc. ("NSP"),

Labrador Mountain Ski Patrol ("LMSP"), and CNY Ski Management, LLC d/b/a Labrador

Mountain ("CNY Ski") (collectively, "Defendants"), and alleges as follows:

**I. PRELIMINARY STATEMENT**

1. This is a civil rights action seeking declaratory and injunctive relief and damages to redress

    the unlawful discrimination experienced by Ms. Gibbs, a profoundly Deaf individual, in

    violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §

12181 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*

2.  Ms. Gibbs is a 48-year-old Black Deaf woman with over 40 years of skiing experience. She possesses extensive qualifications, including current certifications as a Lifeguard and Wilderness First Aid (WFA), years of prior experience as a Lifeguard Instructor (1994-2007), completion of Wilderness First Responder (WFR) training through the National Outdoor Leadership School and Outward Bound, current CPR certification, Avalanche Recreational Level I certification, Keel Sailing Certification, and two Master's degrees.

3.  Beginning in November 2023, Ms. Gibbs sought to become a certified Ski Patroller at Labrador Mountain, requiring completion of Defendants' mandatory training programs: Outdoor Emergency Care (OEC) and Outdoor Emergency Transport (OET). To participate effectively in these technical programs, Ms. Gibbs required qualified American Sign Language (ASL) interpreters.

4.  Defendants, as operators of places of public accommodation and providers of professional certification, are obligated under federal and state law to ensure full and equal access. This includes the duties to: (a) provide effective communication through auxiliary aids and services at no cost to the individual (28 C.F.R. § 36.303(c); 28 C.F.R. § 36.301(c)); (b) make reasonable modifications to policies and procedures (42 U.S.C. § 12182(b)(2)(A)(ii)); and (c) refrain from imposing discriminatory eligibility criteria (42 U.S.C. § 12182(b)(2)(A)(i)).

5.  Despite initial written assurances from NSP leadership in November 2023 that "NSP will support access (interpreter) to educational programs" and that "both the Eastern Division

and National Office will support securing those services," Defendants systematically failed to fulfill these obligations.

6. Over nine months, Defendants engaged in a pattern of discriminatory conduct. They explicitly repudiated their legal obligations, with LMSP's Instructor of Record stating in writing that "NSP is not obligated to pay for the American Sign Language (ASL) interpreter."

7. Defendants unlawfully shifted the burden onto Ms. Gibbs to secure and fund her own interpreters, violating the explicit prohibition against requiring an individual with a disability to provide their own interpreter (28 C.F.R. § 36.303(c)(2)).

8. Defendants refused reasonable modifications, such as adjustments to instructional pacing and a "buddy system" for radio communication. They imposed discriminatory eligibility criteria based on stereotypes, with the owner of CNY Ski baselessly deeming Ms. Gibbs a "liability."

9. When Ms. Gibbs was unable—despite extraordinary efforts—to secure comprehensive volunteer specialized interpreters for the entirety of the rigorous training program, Defendants unenrolled her from the OEC course in August 2024.

10. Ms. Gibbs was excluded not because she lacked the skills or dedication, but solely because she is Deaf and Defendants refused to provide the accommodations required by law.

11. As Ms. Gibbs expressed to Defendants, this was "an opportunity for me to represent both communities, the Black and Brown community and the Deaf community" and to potentially become "the first Black Deaf Woman ski patroller." Defendants' discrimination harmed Ms. Gibbs individually and perpetuated systemic barriers excluding marginalized communities from public safety services.

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the ADA claims pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 12188(a).

13. This Court has supplemental jurisdiction over the NYSHRL claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this District. Ms. Gibbs resides in Cazenovia (Madison County), New York, and Labrador Mountain is located in Truxton (Cortland County), New York.

## III. PARTIES

15. Plaintiff Shana Gibbs is an adult resident of Cazenovia, New York. Ms. Gibbs is profoundly Deaf and utilizes ASL as her primary mode of communication. Ms. Gibbs is an individual with a "disability" as defined by the ADA, 42 U.S.C. § 12102(1)(A) and 28 C.F.R. § 36.105, and the NYSHRL, N.Y. Exec. Law § 292(21). Her deafness substantially limits the major life activities of hearing and communicating.

16. Defendant National Ski Patrol System, Inc. (NSP) is a federally-chartered nonprofit corporation organized under 36 U.S.C. § 152701 *et seq*. NSP establishes the curriculum, sets certification standards, and issues certifications required to become a Ski Patroller nationwide. NSP is a "public accommodation" as defined by 42 U.S.C. § 12181(7)(J) (place of education) and offers courses and examinations related to professional certification pursuant to 42 U.S.C. § 12189.

17. Defendant Labrador Mountain Ski Patrol (LMSP) is the local patrol unit operating at Labrador Mountain. LMSP administers NSP's training programs locally. LMSP personnel relevant to this action include Helena Baert (Patrol Director) and Cindy Hoalcraft (OEC Instructor of Record). LMSP is a "public accommodation" under 42 U.S.C. § 12181(7).

18. Defendant CNY Ski Management, LLC (CNY Ski), doing business as Labrador Mountain, owns and operates the Labrador Mountain ski resort in Truxton, New York. CNY Ski's owner is Peter Harris. CNY Ski provides the physical location for the training and controls access to the facilities. Labrador Mountain is a "public accommodation" as defined by 42 U.S.C. § 12181(7)(L) (place of recreation or exercise) and (7)(J) (place of education).

## IV. FACTUAL ALLEGATIONS

### A. Ms. Gibbs's Qualifications

19. Ms. Gibbs possesses exceptional qualifications for the Ski Patrol, including over four decades of skiing experience across the United States. In 2000, she was invited to join the USA Deaf Olympics Ski Team.

20. Her emergency response credentials include current certification as a Lifeguard and Wilderness First Aid (WFA), prior experience as a Lifeguard Instructor (1994-2007), and completion of WFR training through the National Outdoor Leadership School (NOLS) and Outward Bound. She maintains current CPR certification

21. Ms. Gibbs also has professional experience relevant to this matter as a Deaf Interpreter, an educator in Interpreter Training Programs (ITPs), and a former state-wide interpreter coordinator.

22. Ms. Gibbs also holds Avalanche Recreational Level I certification and Keel Sailing Certification. These certifications demonstrate her proven ability to effectively communicate and perform safety-critical functions in challenging and dynamic environments where constant interpreter presence is not feasible. In avalanche terrain and sailing contexts, Ms. Gibbs successfully completed rigorous training and demonstrated the competence necessary to earn these certifications, despite the inherent communication challenges in those environments. Her successful attainment of these certifications directly contradicts any assertion that she cannot function safely or effectively without an interpreter present at all times.

## B. Initial Contact and NSP's Promises of Support

23. On or about November 4, 2023, Ms. Gibbs contacted NSP to inquire about becoming a ski patroller.

24. Ms. Gibbs explicitly identified herself as a "Black Deaf woman" and clearly stated her accommodation needs: "Accessibility for me is having ASL interpreters for trainings and workshops."

25. Ms. Gibbs specifically requested assurance that NSP was "prepared and willing to provide/cover (meaning pay for interpreting services—remote and onsite)."

26. On November 17, 2023, Kim Terwilliger, NSP Assistant Division Director for the Eastern Division, provided written assurance: "As far as accessing interpreter services, both the Eastern Division and National Office will support securing those services... NSP will support access (interpreter) to educational programs."

27. Relying on these explicit assurances, Ms. Gibbs proceeded with her candidacy.

28. In December 2023, Ms. Gibbs met with LMSP leadership, including Ms. Baert and others, who expressed support and enthusiasm for her participation.

## C. Defendants Shift Responsibility and Deny Obligations During OET Training

29. In January 2024, Ms. Gibbs registered as an NSP member and paid the required fees for the OEC course.

30. LMSP leadership encouraged Ms. Gibbs to begin OET (skiing and toboggan) training immediately during the Winter 2023-2024 season.

31. Despite NSP's November 2023 commitment, Defendants failed to provide or fund any interpreters for the OET training.

32. To participate, Ms. Gibbs was forced to secure her own accommodations, relying on inadequate voice-to-text applications and soliciting pro bono interpretation from a personal friend.

33. On January 15, 2024, Ms. Gibbs emailed Ms. Baert, emphasizing the need for funded interpreters for both OEC and OET. She provided a cost estimate of approximately $23,000 for OEC (requiring two interpreters for the technical content) and offered resources for securing qualified interpreters.

34. Instead of budgeting for access, Defendants attempted to shift the burden. In March 2024, Ms. Baert asked Ms. Gibbs to complete a grant application to seek external funding for the interpreting services Defendants were legally obligated to provide.

## D. Discrimination at the Powderfall Conference

35. In early 2024, Ms. Gibbs was awarded a scholarship to attend NSP's Powderfall Conference.

36. NSP denied her request for ASL interpretation for selected workshops, citing "cost-prohibitive" expenses.

37. When Ms. Gibbs asked to defer the scholarship to 2025 to allow more time for coordination, NSP refused and ultimately revoked the scholarship because she could not attend without accommodation.

**E. Summer 2024: Defendants Explicitly Repudiate Their Legal Obligations**

38. As the Fall 2024 OEC course approached, communications shifted from support to explicit denial of responsibility.

39. On July 21, 2024, Ms. Gibbs RSVP'd for a July 31 virtual orientation and requested an interpreter.

40. On July 22, 2024, Cindy Hoalcraft, the OEC Instructor of Record, responded with a stark reversal: "My understanding is that you are to provide your own interpreter."

41. On July 27, 2024, Ms. Hoalcraft explicitly repudiated Defendants' legal obligations: "As I and others have explained to you, NSP is not obligated to pay for the American Sign Language (ASL) interpreter that you will need for the course and the patrol activities."

42. This statement was legally incorrect and contradicted both the ADA and NSP's prior written commitment.

43. Ms. Hoalcraft again pressured Ms. Gibbs to apply for an external grant, calling it "a crucial step for your participation," thereby conditioning her participation on her ability to secure funding for required accommodations.

**F. Ms. Gibbs's Efforts to Coordinate Volunteers and Defendants' Refusal of Modifications**

44. Faced with Defendants' refusal to comply with the law, Ms. Gibbs undertook the significant labor of attempting to coordinate volunteer interpreters herself, utilizing her expertise as a former interpreter coordinator to create detailed spreadsheets and recruit specialized medical interpreters.

45. Ms. Gibbs simultaneously requested reasonable modifications to facilitate her participation.

46. First, Ms. Gibbs requested that volunteer interpreters receive leisure ski passes as barter compensation, noting that "interpreting while skiing is work, not leisure." On August 1, 2024, CNY Ski and LMSP refused this request, citing "precedent."

47. Second, Ms. Gibbs requested standard accessibility practices of brief pauses for interpreter lag time and interpreter breaks. Ms. Hoalcraft resisted these adjustments, stating on August 1, 2024: "Adjustments to allow for asynchronous interpretation and the need for interpreters' breaks, while understandable, is a lot to ask of our instructors and candidates."

48. Third, Ms. Gibbs proposed a "buddy system" for patrol operations where a partner would handle primary radio communication, a system she successfully utilized as a lifeguard. Defendants ignored this proposal.

49. Defendants failed to engage in any meaningful interactive process to identify workable alternatives.

**G. Exclusion and Unenrollment Based on Discriminatory Criteria**

50. In late August 2024, during a meeting with Ms. Baert and Ms. Hoalcraft, Ms. Gibbs was informed that she could not continue as a candidate.

51. Defendants provided multiple discriminatory reasons for her exclusion, including that interpreting services could not be provided (because Defendants refused to provide them).

52. Defendants stated that Peter Harris, the owner of CNY Ski, declared that Ms. Gibbs is a "liability" who "cannot be allowed on the mountain."

53. Defendants further imposed the requirement that Ms. Gibbs could not become a Ski Patroller unless she had an interpreter with her "every time" she patrols.

54. Ms. Gibbs's possession of Avalanche Recreational Level I certification and Keel Sailing Certification—both safety-critical activities requiring effective communication in challenging environments where constant interpreter presence is impractical or impossible—directly refutes Defendants' discriminatory requirement that she must have an interpreter with her "every time" she patrols. Defendants' insistence on this requirement, despite concrete evidence of Ms. Gibbs's demonstrated ability to communicate effectively and perform safety functions in analogous contexts, confirms that the requirement was based on unfounded stereotypes and generalizations about Deaf individuals rather than any individualized assessment of Ms. Gibbs's actual capabilities. The avalanche and sailing certifications establish that Ms. Gibbs has successfully navigated precisely the type of communication challenges Defendants claimed made her a "liability," thereby exposing Defendants' purported safety concerns as pretextual.

55. The "liability" designation and the "interpreter at all times" requirement were based on stereotypes and generalizations, not any individualized assessment of Ms. Gibbs's abilities or the potential for reasonable modifications.

56. On August 28, 2024, Ms. Hoalcraft unenrolled Ms. Gibbs from the OEC course, effectively terminating her candidacy due to her disability and Defendants' refusal to accommodate it.

57. As a direct result of Defendants' discrimination, Ms. Gibbs has suffered loss of professional opportunity, emotional distress, humiliation, and frustration.

## V. CAUSES OF ACTION

### COUNT I

### VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

**(Failure to Ensure Effective Communication and Provide Auxiliary Aids and Services)**

**(42 U.S.C. § 12181 et seq.; 28 C.F.R. Part 36)**

58. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59. Title III of the ADA mandates that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

60. Defendants are places of public accommodation subject to the ADA. 42 U.S.C. § 12181(7).

61. Discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

62. Public accommodations must "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). Communication must be "as effective as communication with others." *Id*.

63. "Auxiliary aids and services" explicitly include "qualified interpreters." 42 U.S.C. § 12103(1)(A); 28 C.F.R. § 36.303(b)(1).

64. A "qualified interpreter" must be able to interpret effectively, accurately, and impartially, "using any necessary specialized vocabulary." 28 C.F.R. § 36.104.

65. The OEC and OET courses involve complex, lengthy, and specialized medical and technical vocabulary in a safety-critical context. Qualified ASL interpreters were necessary for Ms. Gibbs's effective communication. 28 C.F.R. § 36.303(c)(1)(ii).

66. Defendants failed to furnish these necessary auxiliary aids and services for the OET training, the OEC course, and the Powderfall Conference, despite repeated requests and initial assurances.

67. Defendants violated the ADA by requiring Ms. Gibbs to secure her own interpreters. Federal regulations mandate: "A public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her." 28 C.F.R. § 36.303(c)(2). Defendants' explicit instruction that Ms. Gibbs must "provide your own interpreter" violated this regulation.

68. Defendants violated the ADA by attempting to shift the cost of accommodations onto Ms. Gibbs. "A public accommodation shall not impose a surcharge on a particular individual with a disability... to cover the costs of measures, such as the provision of auxiliary aids." 28 C.F.R. § 36.301(c). Defendants' refusal to pay for interpreters and insistence that Ms. Gibbs secure grants or volunteers constitutes an unlawful imposition of costs and an attempt to impose prohibited surcharges.

## COUNT II

## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

### (Failure to Make Reasonable Modifications)

### (42 U.S.C. § 12181 et seq.; 28 C.F.R. Part 36)

67. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68. Discrimination under the ADA includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," unless the modifications would fundamentally alter the nature of the services. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

69. Ms. Gibbs requested reasonable and necessary modifications to Defendants' policies and procedures.

70. Ms. Gibbs requested modifications to classroom procedures (e.g., brief pauses for interpreter lag time and breaks). Defendants resisted these standard modifications, characterizing them as "a lot to ask."

71. Ms. Gibbs proposed a modification to patrolling procedures (e.g., use of a buddy system for radio communication). Defendants failed to implement or meaningfully consider this modification.

72. Ms. Gibbs requested a modification to the ski pass policy to provide leisure passes to incentivize *pro bono* interpreters—a modification necessitated by Defendants' refusal to fund the services. Defendants denied this request based on "precedent" without analyzing the need for accommodation.

73. The requested modifications were reasonable, necessary, and would not fundamentally alter the nature of the training or patrol services. Defendants' refusal to implement these modifications constituted unlawful discrimination.

## COUNT III

## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

### (Imposition of Discriminatory Eligibility Criteria and Denial of Participation)

### (42 U.S.C. § 12181 et seq.; 28 C.F.R. Part 36)

74. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Discrimination includes the "imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability... unless such criteria can be shown to be necessary." 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a).

76. Defendants imposed unnecessary and discriminatory criteria by requiring that Ms. Gibbs must have an interpreter with her at all times while patrolling, a standard not applied to others and which ignored reasonable modifications.

77. Furthermore, Defendant CNY Ski, through its owner Peter Harris, excluded Ms. Gibbs by deeming her a "liability." Public accommodations must ensure that safety requirements are "based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. § 36.301(b).

78. A public accommodation may only exclude an individual if they pose a "direct threat" to health or safety that cannot be mitigated by reasonable modifications. 42 U.S.C. § 12182(b)(3).

79. In determining whether a direct threat exists, a public accommodation "must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence," to ascertain the risk and whether modifications will mitigate it. 28 C.F.R. § 36.208(b).

80. Defendants failed to conduct any individualized assessment and instead relied on generalizations about Ms. Gibbs's capabilities, ignoring her qualifications, proposed modifications, and prior experience.

81. By imposing discriminatory eligibility criteria and ultimately unenrolling Ms. Gibbs from the OEC course, Defendants denied Ms. Gibbs the opportunity to participate in or benefit from their services. 42 U.S.C. § 12182(b)(1)(A)(i).

## COUNT IV

## VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

### (Retaliation)

### (42 U.S.C. § 12203; 28 C.F.R. § 36.206)

82. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

83. The ADA prohibits retaliation, providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a); see also 28 C.F.R. § 36.206.

84. Ms. Gibbs engaged in protected activity by repeatedly requesting reasonable accommodations (ASL interpreters and modifications) and advocating for her rights to equal access under the ADA.

85. Following Ms. Gibbs's protected advocacy, Defendants retaliated against her. Defendants shifted from initial promises of support to explicit denial of accommodations, characterized her requests as "a lot to ask," labeled her a "liability" after she persisted in requesting accommodations, and ultimately terminated her participation.

86. The temporal proximity and the increasingly hostile responses to Ms. Gibbs's requests establish a causal connection between the protected activity and the adverse retaliatory actions.

**COUNT V**

**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

**(N.Y. Exec. Law § 290 et seq.; 9 NYCRR § 466.11)**

87. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

88. The NYSHRL makes it an unlawful discriminatory practice for the owner or operator of "any place of public accommodation... because of the... disability... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a).

89. Defendants operate places of "public accommodation" within the meaning of N.Y. Exec. Law § 292(9).

90. Discrimination under the NYSHRL includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability full and equal enjoyment." N.Y. Exec. Law § 296(2)(c)(ii).

91. "Reasonable accommodation" includes the "provision of auxiliary aids and services." N.Y. Exec. Law § 292(21-f). Regulations mandate that reasonable accommodations shall include the provision of auxiliary aids and services, as well as changes to rules, policies, and/or practices. 9 NYCRR § 466.11(b)(1)(iii)-(iv).

92. It is unlawful to refuse to provide a reasonable accommodation for the known disability of an individual in a place of public accommodation. 9 NYCRR § 466.11(f)(1).

93. The NYSHRL requires a "cooperative dialogue" when an accommodation is requested, meaning a "good faith exchange of information and ideas for the purpose of arriving at the appropriate reasonable accommodation." 9 NYCRR § 466.11(e); 9 NYCRR § 466.11(a)(3).

94. Defendants failed to engage in a good faith cooperative dialogue, instead unilaterally repudiating their responsibilities, refusing to discuss modifications, and excluding Plaintiff.

95. Defendants engaged in unlawful discriminatory practices in violation of the NYSHRL by refusing to provide necessary auxiliary aids (ASL interpreters); refusing to make reasonable accommodations (modifying ski pass policies, instructional pacing, and communication protocols); imposing discriminatory eligibility criteria by deeming Ms. Gibbs a "liability"; and denying Ms. Gibbs the privileges of their programs by unenrolling her on the basis of her disability.

96. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Ms. Gibbs has suffered emotional distress, humiliation, loss of opportunity, and other damages, and is entitled to relief under N.Y. Exec. Law § 297(9).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shana Gibbs respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

A. A Declaratory Judgment that Defendants' policies, practices, acts, and omissions described herein violate Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and its implementing regulations;

B. A preliminary and permanent injunction enjoining Defendants, their officers, agents, employees, successors, and all persons in active concert or participation with them, from discriminating against Ms. Gibbs and other individuals with disabilities, and specifically directing Defendants to:

i. Immediately reinstate Ms. Gibbs into the National Ski Patrol training program with full candidacy status;

ii. Provide and fund, at Defendants' expense and at no cost to Ms. Gibbs, appropriate auxiliary aids and services, including qualified ASL interpreters with knowledge of medical and emergency response terminology, for all training programs, courses, meetings, examinations, and patrol activities;

iii. Implement reasonable modifications to policies, practices, and procedures as necessary, including adjusting instructional pacing to accommodate interpretation, and implementing a buddy system or other alternative communication strategies for patrol operations;

iv. Cease the imposition of discriminatory eligibility criteria based on stereotypes or generalizations, and conduct individualized assessments based on actual abilities;

v. Develop, implement, and maintain written policies ensuring compliance with the ADA and NYSHRL regarding effective communication, reasonable accommodations, the cooperative dialogue process, and the prohibition of retaliation;

vi. Provide mandatory training to all relevant staff, instructors, and decision-makers on their legal obligations under the ADA and NYSHRL, including the duty to provide auxiliary aids at no cost to the individual;

vii. Appoint an ADA Coordinator to ensure ongoing compliance and handle accommodation requests; and

viii. Post notice of ADA compliance and accommodation procedures in prominent locations and on all websites.

C. An award of compensatory damages to Ms. Gibbs for the emotional distress, humiliation, mental anguish, loss of educational and professional opportunities, and out-of-pocket expenses caused by Defendants' violations, in an amount to be determined at trial;

D. An award of punitive damages against Defendants for their willful, wanton, and malicious violation of Ms. Gibbs's civil rights, to deter future discrimination;

E. An award of Plaintiff's reasonable attorneys' fees, costs, and expenses incurred in this action, including expert witness fees, as authorized by 42 U.S.C. § 12205 and N.Y. Exec. Law § 297(10);

F. Pre-judgment and post-judgment interest at the maximum legal rate; and

G. Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 9, 2025                              Respectfully submitted,

                                                    /s/ *Andrew Rozynski*
                                                    Andrew Rozynski, Esq.
                                                    **EISENBERG & BAUM, LLP**
                                                    24 Union Square East, PH
                                                    New York, NY 10003
                                                    (212) 353-8700
                                                    arozynski@eandblaw.com
                                                    *Attorneys for Plaintiffs*